UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAMES HURTADO, *et. al.*,<br><br>                    Plaintiffs,<br>    vs.<br><br>KEN SUPRENANT,<br><br>                    Defendant,<br>    and<br><br>AGILITY CREDIT, LLC<br><br>                    Nominal Defendant. | Case No.: 2:23-cv-01433-GMN-EJY<br><br>**ORDER GRANTING MOTION TO DISMISS IN PART** |

Pending before the Court is a Motion to Dismiss, (ECF No. 4), filed by Defendant Ken Suprenant. Plaintiffs James Hurtado and Stephanie Hurtado filed a Response, (ECF No. 6), to which Defendant filed a Reply, (ECF No. 10).[1]

For the following reasons, the Court **GRANTS in part** the Motion to Dismiss.

**I.      BACKGROUND**

This case arises out of a business relationship between Plaintiff James Hurtado, Defendant Suprenant, and non-party William Dale. (*See generally* Compl., ECF No. 1-3). Plaintiff, Defendant, and Dale created Agility Credit LLC by combining a $750,000 loan from Plaintiffs with Defendant's business acumen serving as Chief Executive Officer and Dale's technical knowledge. (*Id.* ¶ 9). In January 2022, the parties executed a Promissory Note, Loan Agreement, and Security Agreement, and Defendant signed a personal guaranty to ensure $250,000 liability for Plaintiffs' $750,000 loan. (*Id.* ¶¶ 10–12). Later, on October 1, 2022, the

---

[1] Because the Response brief was docketed twice, at ECF Nos. 6 and 9, the Court will refer to the lower number, ECF No. 6, for the purpose of this order.

parties executed revisions to the Promissory Note, Loan Agreement, and Security Agreement. (*Id.* ¶ 13). The parties hired Defendant as CEO of Agility at a salary of $10,000 per month. (*Id.* ¶¶ 15–16). During his term as CEO, Defendant hired employees from National Credit Center, despite knowing they were subject to non-compete agreements. (*Id.* ¶¶ 18–19). This hiring led to a lawsuit, for which Plaintiffs paid the litigation expenses. (*Id.* ¶ 22).

Plaintiffs allege that Defendant failed to pay his financial commitments, such as the $250,000 personal guaranty and $150,000 he promised to pay after the sale of his home. (*Id.* ¶¶ 14, 23). When Defendant sold his home, he used the proceeds to purchase a home in Texas instead of paying Plaintiffs. (*Id.* ¶ 24). Because Defendant did not pay Plaintiffs, they loaned an additional $325,000 to Agility. (*Id.* ¶ 17). Defendant eventually resigned from his position at Agility in May 2023. (*Id.* ¶ 25). Plaintiffs claim to have suffered financial harm including the initial $750,000 loan, a second $325,000 cash injection, $22,500 in interest, and over $1,000 in other fees. (*Id.* ¶ 25, 27).

Plaintiffs filed this suit in state court and brought ten causes of action. The first claim is for breach of contract against Nominal Defendant Agility, and the other nine claims are against Defendant Suprenant for (1) breach of contract, (2) breach of personal guaranty, (3) breach of good faith and fair dealing, (4) conversion, (5) unjust enrichment, (6) fraud, (7) breach of fiduciary duty, (8) breach of contract as to the operating agreement, and (9) declaratory judgment. (*Id.* ¶¶ 28–111). Defendant removed to federal court, and then filed the instant Motion to Dismiss six of the nine claims against him. (*See generally* Mot. Dismiss, ECF No. 4).

II. **LEGAL STANDARD**

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### III.     DISCUSSION

Defendant moves to dismiss six claims.  The Court will review each claim below, beginning with Plaintiffs' claim for contractual breach of the implied covenant of good faith and fair dealing.

#### A. Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendant argues that the Complaint fails to state a claim for breach of the implied covenant of good faith and fair dealing because Plaintiffs have not alleged that Defendant complied with the literal terms of the contract. (Mot. Dismiss 5:8–12).  He further maintains that Plaintiffs' allegations for their breach of contract claim and good faith and fair dealing claim are "entirely redundant." (*Id.* 6:9–12).  Plaintiffs respond that they may plead both breach of contract and breach of the implied covenant as alternative theories. (Resp. 9:14–18, ECF No. 6).  As Plaintiffs point out, "While plaintiffs may plead both breach of contract and breach of the implied covenants as alternative theories of liability, all elements of each cause of action must be properly pleaded." *Stebbins v. Geico Ins. Agency*, No. 2:18-cv-00590, 2019 WL 281281, at *3 (D. Nev. Jan. 22, 2019).

Nevada law implies a covenant of good faith and fair dealing in every contract. *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922–23 (Nev. 1991).  To state a claim

for breach of the implied covenants of good faith and fair dealing, a plaintiff must allege: (1) the existence of a contract between the parties; (2) that defendant breached its duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract; and (3) the plaintiff's justified expectations under the contract were denied. *See Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995).  A breach of the implied covenant of good faith and fair dealing occurs "[w]here the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract." *Hilton Hotels Corp.*, 808 P.2d at 923–24.  "This cause of action is different from one for breach of contract because it requires literal compliance with the terms of the contract." *Stebbins*, 2019 WL 281281, at *3. "It is well established that a claim alleging breach of the implied covenants of good faith and fair dealing cannot be based on the same conduct establishing a separately pled breach of contract claim." *Id.*

In this case, while Plaintiffs are correct that they may plead both breach of contract and breach of the implied covenant as alternative theories of liability, they did not properly plead all elements of each cause of action.  Plaintiffs' allegations for both claims are premised on the same conduct; Defendant breached the loan agreements and his Personal Guaranty by failing to repay his $250,000 share of the $750,000 loan. (*See* Compl. ¶¶ 40, 46).  Rather than alleging that Defendant literally complied with the terms of the contract, Plaintiffs specifically allege that he breached it. (*Id.*).  Therefore, the Court DISMISSES Plaintiffs' claim for contractual breach of the implied covenant of good faith and fair dealing, but grants leave to amend because it is not clear that amendment would be futile. *See Sonoma Cty. v. Ass'n of Retired Emps. v. Sonoma Cty.*, 708 F.3d 1109, 1118 (9th Cir. 2013) ("As a general rule, [d]ismissal without leave to amend is improper unless it is clear ... that the complaint could not be saved by any amendment.") (quotation omitted).

///

**B. Unjust Enrichment**

Defendant moves to dismiss Plaintiffs' unjust enrichment claim because the parties had express written contracts: the Amended Personal Guaranty and the Operating Agreements. (Mot. Dismiss 7:17–21). An unjust enrichment claim cannot lie where an express written contract exists "because no agreement can be implied when there is an express agreement." *Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997). "The doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another [or should pay for]." *Id.*

Here, Plaintiffs' Complaint states that "Suprenant and Dale signed a personal guaranty to ensure their personal liability for the $750,000 loan, along with all other fees provided under the Promissory Note and Loan Agreement." (Compl. ¶ 12). Plaintiffs do not address the argument that an express written contract existed, but reinstate that Defendant personally guaranteed to reimburse Plaintiffs with $250,000. (Resp. 11:5–6). To the extent that Plaintiffs were a party to that contract, the written contract would thus prohibit Plaintiffs' unjust enrichment claim and must be dismissed. If Plaintiffs were not a party to the express written contract, they are granted leave to amend the claim to clarify as much.

Additionally, Defendant argues that Plaintiffs' loan to Agility does not confer a benefit to Defendant that he could retain, and that his $160,000 in salary payments were not retained wrongfully. (*Id.* 8:2–7). "Unjust enrichment exists when the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." *Certified Fire Prot., Inc. v. Precision*

*Constr., Inc.*, 283 P.3d 250, 257 (Nev. 2012) (quoting *Unionamerica Mtg. v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981)).

In this case, Plaintiffs allege that the $160,000 salary was from Agility, not themselves. (Resp. 11:5–7). An unjust enrichment claim requires the Plaintiffs to be the ones conferring the benefit. Plaintiffs also do not allege why it would be unequitable for Defendant to retain the salary he made while acting as CEO. While Plaintiffs allege that the salary was "contingent upon [Defendant] fulfilling his duties," they provide no factual allegations regarding what this contingency entailed or what duties were left unfilled. (*See* Compl. 5:1–2). Therefore, Plaintiffs' unjust enrichment claim is DISMISSED with leave to amend to remedy the deficiencies identified in this Order.

**C. Conversion**

Turning to Plaintiffs' conversion claim, Defendant argues it should be dismissed because conversion claims cannot be based on a debt owed to a creditor. (Mot. Dismiss 8:10–25). "A conversion is defined as a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights." *Wantz v. Redfield*, 326 P.2d 413, 414 (Nev. 1958). Although money cannot typically be the subject of a conversion claim, it can be the subject if the money is identifiable, such as being set aside in a separate account or separately earmarked. *Dunham Tr. Co. as Tr. of Darrell N. Garmann Testamentary Tr. 2012 v. Wells Fargo Bank, N.A.*, No. 3:18-cv-00181-LRH-WGC, 2019 WL 489095, at *6 (D. Nev. Feb. 7, 2019). "[A] cause of action for conversion does not lie against a debtor for refusing to repay his creditor." *WMCV Phase 3, LLC v. Shushok & McCoy, Inc.*, 750 F. Supp. 2d 1180, 1195 (D. Nev. 2010); *see also Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1058 (N.D. Cal. 2021) (explaining that a "plaintiff may not ordinarily recover for the tort of conversion for the breach of duties that merely restate contractual obligations.").

Here, Plaintiffs' conversion claim is based on the assertion that Defendant "wrongfully exerted dominion over Plaintiff's property by failing to provide Plaintiffs with the funds he owes to them." (Compl. ¶ 53). Plaintiffs allege they were damaged by Defendant's dominion over the personally guaranteed funds of at least $250,000. (*Id.* ¶ 54). Because this claim appears to be a breach of contract claim "recast" as a conversion tort, it must be dismissed. *See WMCV Phase 3*, 750 F. Supp. 2d at 1195. Plaintiffs and Defendant are in the position of debtor and creditor, and a "conversion claim cannot be maintained to collect on a debt that could be satisfied by money generally." *Hannibal-Fisher v. Grand Canyon Univ.*, 523 F. Supp. 3d 1087, 1098 (D. Ariz. 2021).

Further, Plaintiffs' response that the money can be subject to a claim for conversion because it was wrongfully obtained is unavailing. (*See* Resp. 12:5–19). Plaintiffs' claim is based on Defendant's $250,00 personal guaranty of the $750,000 loan made to Agility; Defendant did not obtain $250,000 from Plaintiffs. Because the $250,000 personal guaranty cannot be the basis of a conversion claim, Plaintiffs' claim for conversion is DISMISSED with prejudice.

**D. Fraud**

Next, Defendant moves to dismiss Plaintiffs' fraud claim on two grounds: (1) Defendants statements were mere puffery or statements of opinion, and (2) Plaintiffs otherwise fail to plead sufficient facts for fraud under FRCP 9. (Mot. Dismiss 9:10–10:14). To state a claim for fraud in Nevada, the plaintiff must demonstrate (1) a "false representation made by the defendant," (2) the defendant's "knowledge or belief that the representation is false," (3) the defendant's "intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation," (4) the plaintiff's "justifiable reliance upon the misrepresentation," and (5) "[d]amage to the plaintiff resulting from such reliance." *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992). "[W]hen fraud is alleged, 'a party must state with particularity the

circumstances constituting fraud.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)).  The allegations must include "'who, what, when, where, and how' of the misconduct charged." *Id.* (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).  In other words, the complaint "must include 'an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (quoting *Swartz v. KPMG, LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam)) (internal quotations omitted).  The allegations must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993).

      Plaintiffs have sufficiently pled with particularity facts supporting his fraud claim surrounding Defendant's personal guaranty and salary payments.  Accepting Plaintiffs' facts as true, around January and October 2022, Defendant made a false representation that he would provide Plaintiffs with $250,000 for their initial $750,000 loan to Agility, even though he had no intention of actually reimbursing Plaintiffs for the loan. (Compl. ¶¶ 65, 67).  Defendant further represented that Agility "would be financially successful and profitable," and that Plaintiffs would receive a significant return on their loan, to induce Plaintiffs into loaning Agility $750,000 and paying Defendant a $160,000 salary for his work as CEO. (*Id.* ¶¶ 64–65). Defendant had no intention of providing Plaintiffs with a return on their $750,000 loan. (*Id.* ¶ 65).  Plaintiffs relied on these representations and were induced to make the loan to Agility and pay Defendant's salary. (*Id.* ¶¶ 74–77).  When Plaintiffs noticed that Defendant was not honoring his financial commitments, he would tell them that he was selling his home or in the midst of cashing out savings or retirement accounts and would plead to continue being paid in an effort to obtain a larger home loan. (*Id.* ¶ 68).  After the sale of Defendant's home, rather

than using the funds to pay Plaintiffs, he purchased a new home. (*Id.* ¶ 69).  With these details, Plaintiffs' Complaint includes enough detail to give Defendant notice of the fraud alleged so that he can defend against it.

As to Plaintiffs' fraud allegations surrounding Defendant's misrepresentations about the employees' non-compete agreements, however, the Court agrees with Defendants that Plaintiffs do not allege sufficient detail.  Plaintiffs allege that Defendant misled them when he intentionally hired employees who he knew were subject to non-compete agreements, but do not provide detail on what specific misrepresentation was made by Defendant or when the misrepresentation occurred. (*Id.* ¶¶ 66, 76).  Because it is not clear that amendment would be futile, the Court grants Plaintiffs leave to amend their fraud allegation relating to Defendant's hiring misrepresentation.

**E. Breach of Fiduciary Duty**

Defendant also argues that Plaintiffs' breach of fiduciary duty claim should be dismissed because the duties of managers and members of an LLC are limited to the duty of good faith and fair dealing, unless the operating agreement provides otherwise. (Mot. Dismiss 11:23–12:19).  A breach of fiduciary duty claim requires Plaintiffs to show the existence of a fiduciary duty, the breach of that duty, and that the breach proximately caused the damages. *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 880–81 (9th Cir. 2007) (applying Nevada law); *see also Clark v. Lubritz*, 944 P.2d 861, 866–67 (Nev. 1997).  Per NRS 86.298, the duties of a manager or member of an LLC are only "the implied contractual covenant of good faith and fair dealing" and "such other duties, including, without limitation, fiduciary duties, if any, as are expressly prescribed by the articles of organization or the operating agreement."  "Unlike many states, Nevada does not impose any statutory fiduciary duties on members of LLCs." *HP Tuners, LLC v. Cannata,* No. 3:18-cv-00527-LRH-WGC, 2022 WL 562625, at *6 (D. Nev. Feb. 24, 2022) (citing *In re Plyam*, 530 B.R. 456, 472 (9th Cir. B.A.P. 2015).  Nevada allows

LLC members to decide whether to impose fiduciary duties on themselves through the operating agreement. *JPMorgan Chase Bank, N.A. v. KB Home*, 632 F. Supp. 2d 1013, 1025–26 (D. Nev. 2009).  Therefore, if Defendant owed Plaintiffs a fiduciary duty, it must be stated in the Operating Agreement.

The relevant operating agreements in this case, which the Court incorporates by reference, do not contain explicit language imposing additional fiduciary duties on the members of Agility LLC. (*See* January 2022 Operating Agreement, Ex. A to Mot. Dismiss, ECF No. 4-1); (October 2022 Operating Agreement, Ex. B to Mot. Dismiss, ECF No. 4-2).  Defendant is therefore only bound by the duty of good faith and fair dealing, which the Court addressed above.  Plaintiffs seems to admit as much in their Response, in which they claim that Defendant is attempting to avoid accountability "by capitalizing on the absence of specific language with an operating agreement." (Resp. 15:3–6).  While the Court is sympathetic to Plaintiffs' frustration, the Court cannot simply read additional obligations into the parties' operating agreement.  Plaintiffs' claim for breach of fiduciary duty is therefore DISMISSED with prejudice.

### F. Breach of Operating Agreement

Lastly, Defendant argues that Plaintiffs' claim for breach of the operating agreement, based on his resignation from Agility and acceptance of employment by competitor SNH, should be dismissed because after Defendant resigned, he was no longer subject to the restrictions against engaging in competitive activities per section 4.3.2 of the Operating Agreement. (Mot. Dismiss 14:1–21).

Plaintiffs allege Defendant breached section 4.3.2 of the Operating Agreement, which states that members shall not "engage or invest in, own, manage, operate . . . be employed by, associated with, or in any manner connected with, or render services or advice to, any business whose products or activities compete in whole or in part with the business or other products or

activities of the Company . . . ." (Compl. ¶ 92).  They claim that Defendant's current employer, SNH, is a direct competitor of Agility, and that Defendant breached the Operating Agreement when he was hired by SNH. (*Id.* ¶¶ 94–101).  Section 5.6.1 of the October 2022 Operating Agreement states that if a member ceases to be a service provider, within one year of the effective date, then their class C units will be forfeited and "such Member shall be deemed to have withdrawn as a Member. . . ." (October 2022 Operating Agreement at 8, Ex. B to Mot. Dismiss, ECF No. 4-2).

Defendant argues that when he resigned from acting as a Service Provider/CEO on May 19, 2023, within a year of the October 2022 effective date, he was no longer a Member of Agility. (Mot. Dismiss 14:7–19).  Because he was no longer a Member, he could not have breached Section 4.3.2 because it only applies to members or affiliates. (*Id.* 14:19–21).  Plaintiffs respond that they "caught Defendant in the act" and that he was "bound by a non-disclosure agreement . . . during prior negotiation between Agility and Defendant's new employer." (Resp. 16:1–6).  Plaintiffs' Complaint omits the important allegation that Defendant breached the Operating Agreement while he was still a Member of Agility and thus bound by section 4.3.2.  Without this allegation, Plaintiffs are unable to state a claim for breach of the operating agreement.

Further, although the Complaint mentions a non-disclosure agreement, it does not actually bring a claim for breach of the non-disclosure agreement nor explain how it was breached.  If Plaintiffs wish to bring a claim against Defendant for breaching a non-disclosure agreement, they must do so expressly and allege facts allowing the Court to make that reasonable inference.  Plaintiffs' claim for breach of the Operating Agreement is therefore DISMISSED with leave to amend.

## V. CONCLUSION

**IT IS HEREBY ORDERED** that the Motion to Dismiss, (ECF No. 4), is **GRANTED in part and DENIED in part.**

**IT IS FURTHER ORDERED** that Plaintiffs may have 21 days from the date of this Order to file an Amended Complaint. Plaintiffs are granted leave to amend their claims for breach of the implied covenant of good faith and fair dealing, unjust enrichment, fraud, and breach of the Operating Agreement.

**DATED** this __12__ day of June, 2024.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT