UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAMES HURTADO, *et. al.*,<br><br>            Plaintiffs,<br>  vs.<br><br>KEN SUPRENANT,<br><br>            Defendant,<br>  and<br><br>AGILITY CREDIT, LLC,<br><br>           Nominal Defendant. | Case No.: 2:23-cv-01433-GMN-EJY<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS** |

      Pending before the Court is Defendant Ken Suprenant's Second Motion to Dismiss, (ECF No. 28). Plaintiffs James Hurtado and Stephanie Hurtado filed a Response, (ECF No. 29), to which Defendant filed a Reply, (ECF No. 32).

      For the following reasons, the Court **GRANTS in part and DENIES in part** Defendant's Motion to Dismiss.

**I.        BACKGROUND**

      This case arises out of a business relationship between Plaintiff James Hurtado, Defendant Ken Suprenant, and non-party William Dale, who together created Agility Credit, LLC. (First Am. Compl. ("FAC") ¶ 9, ECF No. 25). Mr. Hurtado contributed $325,000 in owner equity, and Plaintiffs Mr. and Mrs. Hurtado also extended a $750,000 loan to Agility. (*Id.* ¶¶ 10–11). Defendant and Dale agreed to provide $250,000 at a later date. (*Id.* ¶ 13). The parties executed a Promissory Note, Loan Agreement, and Security Agreement, which were revised nine months later, and Defendant signed a personal guaranty to ensure liability for Plaintiffs' $750,000 loan. (*Id.* ¶ 14–16).

The parties hired Defendant as CEO of Agility for $10,000 per month as prepayment for future profits. (*Id.* ¶¶ 12, 18). During his term as CEO, Defendant hired new Agility employees from National Credit Center, ("NCC"), even though he was allegedly aware that he would be violating their non-compete clauses. (*Id.* ¶¶ 22, 88). He did not inform Plaintiffs about the non-compete agreements, and the hiring led to a lawsuit by NCC against Plaintiffs and Agility. (*Id.* ¶¶ 21–24).

Further, Plaintiffs allege that Defendant failed to pay his financial commitments, such as the $250,000 personal guaranty and $150,000 he promised to pay after the sale of his Las Vegas home, so they had to loan Agility an additional $325,000. (*Id.* ¶¶ 20, 26). When Defendant sold his Las Vegas home, he used the proceeds to purchase a home in Texas instead of paying Plaintiffs. (*Id.* ¶ 27). Defendant eventually "attempted to resign" from his position at Agility in May 2023. (*Id.* ¶ 28). Plaintiffs' financial harms include the initial $750,000 loan, a second $325,000 cash injection, $22,500 in interest, and over $1,000 in other fees. (*Id.* ¶ 30).

Plaintiffs filed this suit in state court and brought ten causes of action. The first claim was for breach of contract against Nominal Defendant Agility, and the other nine claims were against Defendant Suprenant for (1) breach of contract, (2) breach of personal guaranty, (3) breach of good faith and fair dealing, (4) conversion, (5) unjust enrichment, (6) fraud, (7) breach of fiduciary duty, (8) breach of contract as to the operating agreement, and (9) declaratory judgment. (Compl. ¶¶ 28–111, Ex. 3 to Pet. Removal, ECF No. 1-3). Defendant removed to federal court, and then filed his first Motion to Dismiss six of the nine claims against him. (*See generally* Mot. Dismiss ("MTD"), ECF No. 4). This Court granted in part the Motion to Dismiss, and gave Plaintiffs leave to amend their claims for breach of the implied covenant of good faith and fair dealing, unjust enrichment, fraud, and breach of the operating agreement. (Order Granting in Part MTD, ECF No. 24). Plaintiffs filed their First Amended

Complaint, (ECF No. 25), and Defendant now moves to dismiss the four claims they amended. (Second MTD, ECF No. 28).

## II.  LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

## III.  DISCUSSION

Defendant moves to dismiss the four claims that Plaintiffs amended, arguing that they suffer from the same problems this Court identified in its previous Order dismissing them with leave to amend. (Second MTD 1:23–28, ECF No. 28).

### A. Breach of the Implied Covenant of Good Faith and Fair Dealing

First, Defendant argues that Plaintiffs have again failed to allege Defendant's compliance with the literal terms of their loan agreement and personal guaranty, and thus their breach of the implied covenant claim must fail as a matter of law. (*Id.* 5:22–24).  A breach of the implied covenant of good faith and fair dealing occurs "[w]here the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and

spirit of the contract." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 923–24 (Nev. 1991). "This cause of action is different from one for breach of contract because it requires literal compliance with the terms of the contract." *Stebbins v. Geico Ins. Agency*, No. 2:18-cv-00590, 2019 WL 281281, at *3 (D. Nev. Jan. 22, 2019). "It is well established that a claim alleging breach of the implied covenants of good faith and fair dealing cannot be based on the same conduct establishing a separately pled breach of contract claim." *Id.*

In the Court's first Order, it dismissed Plaintiffs' claim for breach of the implied covenant because their allegations were premised on Defendant's breach of the loan agreement and personal guaranty. (Order Granting in Part MTD 4:13–19). "Rather than alleging that Defendant literally complied with the terms of the contract, Plaintiffs specifically allege that he breached it." (*Id.*). The Court granted Plaintiffs leave to amend because it was not clear that amendment would be futile. (*Id.* 4:19–24).

Plaintiffs amended their claim, but it remains premised on Defendant's contractual breaches. Plaintiffs' claim contains the allegation that Defendant "breached the loan agreements and the Personal Guaranty by failing to perform the substantial duties owed to Plaintiffs," including by failing to make payments. (FAC ¶ 49). In their Response brief, Plaintiffs state that Defendant complied with "certain" contractual obligations, such as holding himself out as CEO and showing up for work. (Resp. 8:7–10, ECF No. 29). But the basis of their claim is still focused on Defendant's contractual breaches, and Plaintiffs still do not allege literal compliance with the terms of the contracts. The Court therefore DISMISSES Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing without leave to amend.

**B. Unjust Enrichment**

Next, Defendant moves to dismiss Plaintiffs' amended unjust enrichment claim because the parties had express written contracts, and the doctrine of unjust enrichment applies to situations in which there are no legal contracts. (Second MTD 6:19–28). An unjust enrichment

claim cannot lie where an express written contract exists "because no agreement can be implied when there is an express agreement." *Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997). "The doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another [or should pay for]." *Id.*

The Court previously dismissed Plaintiffs' unjust enrichment claim due to the existence of their express written contracts, but allowed Plaintiffs leave to amend their claim if they were not a party to the written contract. (Order Granting in Part MTD 5:11–18). Plaintiffs amended their claim to allege that the Loan Agreement was between Plaintiffs as lender, Agility as borrower, and Defendant as a guarantor. (FAC ¶¶ 59–62). Plaintiffs also allege that Defendant received financial benefits from "executing these agreements and establishing dominion over Plaintiffs' property," including their initial $750,000 loan to Agility, his CEO salary of $160,000, and the $250,000 for which he was financially responsible. (*Id.* ¶ 66). Thus, because Plaintiffs specifically assert that Defendant received benefits from "executing these agreements," and the contracts governed the financial benefits Defendant obtained, the Court must DISMISS Plaintiffs' claim without another opportunity to amend.

**C. Fraud**

Defendant also moves to dismiss Plaintiffs' claim for fraud based on alleged false representations and concealment when he hired employees to work at Agility that were subject to non-compete agreements. (Second MTD 8:1–9:8). Defendant argues that to the extent Plaintiffs are alleging he made a false representation, they still did not clarify what the misrepresentation was or when it occurred. (*Id.* 8:12–18). And if Plaintiffs are alleging fraud by concealment, Defendant argues they failed to allege four of the five required elements. (*Id.* 8:19–9:8).

Plaintiffs' claim appears to primarily be based on Defendant's concealment of the fact that his new employees from NCC were subject to non-compete agreements. Their FAC states that Defendant "neglected to disclose the existence of the NCC non-compete agreements to Plaintiffs," and that he "was aware of the NCC non-compete agreements but he concealed them from Plaintiffs." (FAC ¶¶ 86, 88). A prima facie case of fraudulent concealment under Nevada law requires:

> (1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant, intentionally concealed or suppressed the fact with the intent to defraud the plaintiff; that is, the defendant, concealed or suppressed the fact for the purpose of inducing the plaintiff to act differently than she would have if she had known the fact; (4) the plaintiff was unaware of the fact and would have acted differently if she had known of the concealed or suppressed fact; (5) and, as a result of the concealment or suppression of the fact, the plaintiff sustained damages.

*Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 110 (1998), *overruled in part on other grounds by GES, Inc. v. Corbitt*, 21 P.3d 11 (2001).

The Court finds that Plaintiffs have stated a claim for fraudulent concealment. Starting with the first element, Plantiffs allege that Defendant was previously employed by NCC and was aware that NCC employees were required to sign non-compete agreements. (FAC ¶¶ 81–83). He recruited and hired three former NCC employees in 2021 and 2022, but concealed their non-compete agreements from Plaintiffs. (*Id.* ¶ 86). Plaintiffs only found out about the non-compete agreements when Agility was sued as a result of their hiring. (*Id.* ¶ 87).

Moving on to the second element, Plaintiffs allege that they hired Defendant as CEO with the agreement that he would safeguard the company from adverse actions or legal disputes. (*Id.* ¶¶ 84–85). This allegation is sufficient for the pleading stage. A duty to disclose may arise when the parties have a "special relationship," "where a party reasonably imparts special confidence in the defendant and the defendant would reasonably know of this confidence." *Dow Chem. Co.*, 970 P.2d at 110. Defendant would reasonably be aware that

Plaintiffs hired him as CEO with a special confidence that he would make proper hiring decisions and safeguard Agility from legal disputes.

Plaintiffs also allege the third, fourth, and fifth elements. They claim that Defendant concealed the non-compete agreements from Plaintiffs so that they would continue to provide loans and financial support to Agility and pay his CEO salary. (FAC ¶ 90). Plaintiffs were unaware that any representations about the new employees were false and that Defendant was concealing the material fact that the NCC employees were subject to a non-compete. (*Id.* ¶ 91). Plaintiffs sustained damages in the form of litigation expenses. (*Id.* ¶ 25). The Court thus DENIES Defendant's Motion to Dismiss as to Plaintiff's fraud claim.

**D. Breach of Operating Agreement**

Lastly, Defendant argues that Plaintiffs fail to state a claim that he breached the Operating Agreement. (Second MTD 9:9–12:12). Plaintiffs contend that Defendant breached the Operating Agreement in two ways. First, they allege Defendant breached section 4.3.2 of the Operating Agreement by leaving Agility to work for SNH Management Company, a direct competitor of Agility. (FAC ¶¶ 99-104). Second, they allege that he "actively engaged" with ARG, another competitor, during his time as CEO, and provided ARG with confidential information known only to Agility. (*Id.* ¶¶ 110–117).

Beginning with Plaintiffs' first claim under section 4.3.2 of the Operating Agreement, the agreement requires that neither members nor their affiliates shall "engage or invest in, own, manage, operate . . . be employed by, associated with, or in any manner connected with, or render services or advice to, any business whose products or activities compete in whole or in part with the business or other products or activities of the Company . . . ." (*Id.* ¶ 99). Section 5.6.1 of the October 2022 Operating Agreement further states that if a member ceases to be a service provider, within one year of the effective date, then their class C units will be forfeited

and "such Member shall be deemed to have withdrawn as a Member." (Oct. 2022 Operating Agreement at 8, Ex. B to MTD, ECF No. 4-2).

Defendant argues that when he resigned from acting as a Service Provider/CEO on May 19, 2023, he gave up his class C stocks and was no longer a member of Agility. (Second MTD 10:10–24). Because he was no longer a member, he could not have breached section 4.3.2, which applies to members or affiliates. (*Id.*). In the Court's previous Order, it agreed with Defendant that Plaintiffs failed to allege that he breached section 4.3.2 while he was still a Member, and thus bound by the clause. (Order Granting in Part MTD 11:14–17). Plaintiffs' FAC does not contain any new allegations to amend the deficiency identified by the Court, nor do they address this issue in their Response brief. So to the extent their breach of the operating agreement claim is based on Defendant's current employment at SNH, it is DISMISSED without leave to amend.

Moving on to Plaintiffs' second breach claim, Plaintiffs allege that Defendant also breached section 4.3.2 by engaging with another competitor, ARG, during his time as CEO. (FAC ¶¶ 110–19). "Under Nevada law, 'the plaintiff in a breach of contract action must show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach.'" *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 899 (9th Cir. 2013) (quoting *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919–20 (D. Nev. 2006)). Plaintiffs allege that in January 2023, Agility and ARG entered into a mutual non-disclosure agreement while considering a business deal that ultimately did not occur. (FAC ¶¶ 110–12). And during this time, while Defendant was still CEO, he breached section 4.3.2 by "actively engaging with ARG, a competitor or peer, providing ARG with information known only to Agility, before, during, and after his resignation from Agility." (*Id.* ¶ 117). He did so even after the unsuccessful transaction. (*Id.* ¶ 113).

Due to the broad wording of section 4.3.2, the Court finds that Plaintiffs have stated a claim for breach of the operating agreement through Defendant's interactions with ARG. The section states that Members shall not "engage or invest in," "or render services or advice to," any business whose products compete with the Company. (*Id.* ¶ 99). Taking as true Plaintiffs' allegation that ARG is a competitor to Agility, Defendant's action in providing Agility's confidential information to ARG could potentially qualify as a breach of section 4.3.2. Defendant's Motion to Dismiss Plaintiffs' breach of the operating agreement claim is thus **DENIED** as to Defendant's interactions with ARG but **GRANTED** as to his employment with SNH.

## V.   CONCLUSION

**IT IS HEREBY ORDERED** that the Motion to Dismiss, (ECF No. 28), is **GRANTED in part and DENIED in part.** Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing, unjust enrichment, and breach of the operating agreement through Defendant's current employment, are DISMISSED without leave to amend.

**DATED** this __7__ day of October, 2024.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT